UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |   |
|---|---|
| AQUALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL OCEANIC AND<br>ATMOSPHERERIC ADMINISTRATION,<br><br>Defendant. | Case No. 17-cv-02108 (CRC) |

**MEMORANDUM OPINION**

Plaintiff AquAlliance submitted a Freedom of Information Act ("FOIA") request to the National Oceanic and Atmospheric Administration ("NOAA") for records related to pollution caused by the failure of California's Oroville Dam in 2017. After some six weeks passed with no response from NOAA, AquAlliance filed suit. In response, NOAA produced over 3000 unredacted and partially redacted documents and withheld 114 documents in full. It also referred 344 documents to other agencies so that they could make their own exemption determinations. Over the course of the next year, the parties narrowed the number of exemptions in dispute. Ultimately, AquAlliance dropped its objections to all but three documents, which NOAA produced. AquAlliance now moves to recover $41,000 in fees and costs. For the reasons that follow, the Court will deny AquAlliance's motion.

I. Background

Plaintiff AquAlliance is a not-for-profit California corporation whose mission is to "defend northern California waters . . . and to challenge threats to the hydrologic health of the northern Sacramento River watershed." Declaration of Barbara Vlamis ("Vlamis Decl."), ECF

No. 21-1, ¶ 2.  On August 25, 2017, AquAlliance filed a FOIA request with NOAA, requesting "any and all records regarding water quality, aquatic species, and asbestos downstream of Oroville Dam from January 1, 2017 to present."  Id. ¶ 3.  After waiting roughly six weeks and receiving no response from NOAA, AquAlliance filed suit on October 9, 2017.  Id. ¶ 6.  Declaration of Matt Kenna ("Kenna Decl."), ECF No. 21-2, ¶ 4.  On October 30, NOAA acknowledged having received the FOIA request.  Vlamis Decl. ¶ 6.  Two weeks later, NOAA produced to AquAlliance 3134 unredacted documents and 114 partially redacted documents.  Declaration of Shawn Martin ("Martin Decl."), ECF No. 24-1, ¶ 9.  Another 344 responsive records originated in five other agencies, so NOAA referred those records to the agencies for a disclosure determination and instructed them to make a direct production to AquAlliance.  Id.  By the end of January 2018, four of the five agencies—the Bureau of Reclamation, the Fish and Wildlife Service, FERC, and FEMA—had produced records to AquAlliance.  Id. ¶¶ 10–11.  The fifth and final agency, the Army Corps of Engineers, made its production on March 15, 2018.  Id. ¶ 13.

In the meantime, in February 2018, the parties filed a Joint Status Report, setting out a schedule for resolving their remaining disagreements over NOAA's withholdings, which the Court adopted.  Kenna Decl. ¶ 9.  Between February and September NOAA provided AquAlliance with a Vaughn index, and the parties progressively narrowed the number of withholdings in dispute.  Id. ¶ 15.  Ultimately, NOAA agreed to disclose three previously withheld documents, Martin Decl. ¶ 30, making summary judgment proceedings unnecessary.  AquAlliance now seeks $41,421.00 in attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E).

## II. Legal Standard

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in any FOIA case where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To recover fees and costs, a FOIA plaintiff must be both (1) eligible for and (2) entitled to such an award. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011). A plaintiff can become eligible for an award in one of two ways: either by obtaining relief through a judicial order or by showing that its suit caused "a voluntary or unilateral change in position by the agency," resulting in the release of documents. 5 U.S.C. § 552(a)(4)(E)(ii); see also Brayton, 641 F.3d at 525 ("[T]he OPEN Government Act of 2007 . . . revived the possibility of FOIA fee awards in the absence of a court decree.").

If the plaintiff is eligible for a fee award, courts proceed to the entitlement prong. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec. ("EPIC"), 999 F. Supp. 2d 61, 66–67 (D.D.C. 2013) (quoting Brayton, 641 F.3d at 524). Under the entitlement prong, courts consider "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." Morley v. CIA, 719 F.3d 689, 690 (D.C. Cir. 2013). "In applying this test, '[n]o one factor is dispositive.'" EPIC, 999 F. Supp. 2d at 67 (quoting Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)). "The sifting of those criteria over the facts of a case is a matter of district court discretion." Tax Analysts v. DOJ, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

Finally, if a FOIA plaintiff is both eligible for and entitled to an award, courts should assess the reasonableness of the requested fees. While precedent can be a helpful guide to a court in conducting its assessment, this analysis is "necessarily somewhat imprecise." Nat'l

Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982). Thus, courts should "exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." Copeland v. Marshall, 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc).

### III. Analysis

The Court takes eligibility and entitlement in turn.

#### A. Eligibility

AquAlliance claims that it is eligible to receive a fee award because it "'obtained relief' through 'a voluntary or unilateral change in position by the agency[.]'" Plaintiff's Motion for Attorney Fees and Other Litigation Costs, and Memorandum in Support ("Pl's Mot."), ECF No. 21, at 7 (quoting 5 U.S.C. § 552(a)(4)(E)). Under this so-called "catalyst theory" of eligibility, "[t]he key question . . . is whether 'the institution and prosecution of the litigation *cause[d]* the agency to release the documents obtained during the pendency of the litigation.'" Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec., (EPIC III), 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (quoting Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981)) (emphasis added). The mere filing of a complaint followed by the release of documents, however, is insufficient to establish causation. Id. (citing Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). Instead, courts should examine all the circumstances surrounding the release of documents to determine whether the plaintiff's lawsuit or ordinary administrative processing delays actually motivated the agency's response. Compare Conservation Force v. Jewell, 160 F. Supp. 3d 194, 206 (D.D.C. 2016) (no causation where agency released documents after lawsuit was filed but agency adhered to its first-in, first-out procedure) with EPIC III, 811 F. Supp. 2d at 233 (causation where agency took no steps to process request until lawsuit was filed seven months after initial FOIA request).

AquAlliance makes two points in support of its claim that its lawsuit served as a catalyst for agency action. First, it says the lawsuit and subsequent negotiations with NOAA caused the agency to produce documents it initially withheld. Pl's Mot. at 8. And second, it maintains that, because NOAA produced responsive records only *after* AquAlliance filed suit, the lawsuit "accelerate[d] NOAA's initial document production." Id. at 8–9.

The Court need only address the first argument. According to AquAlliance, "because the government agreed to produce redactions it initially withheld *as a result of negotiations in this suit*, there cannot be any question that [the] suit caused a voluntary or unilateral change in position [.]" Id. at 8 (emphasis added). It explains in more detail that

> after all the produced documents were provided to AquAlliance (with document withholdings and redactions), the parties engaged in a process, approved by the Court, to narrow down which, if any withholdings and redactions would be challenged by AquAlliance. Over the course of several months of challenge list and Vaughn index exchanges and settlement negotiations, NOAA provided some of the documents and redactions it had originally withheld in exchange for AquAlliance's agreement not to pursue challenge to others.

Pl's Mot. at 12–13 (citing Kenna Decl. ¶¶ 11–15). That bargained-for release of documents, AquAlliance contends, amounts to a "voluntary or unilateral change in position by the agency" brought about by the filing of the lawsuit. Id. at 13 (quoting 5 U.S.C. § 552(a)(4)(E)).

NOAA agrees with AquAlliance's account in the block-quoted passage above right up until the assertion that the final production was "in exchange for AquAlliance's agreement to not pursue challenge to others." Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees ("Def's Opp."), ECF No. 24, at 11. According to NOAA, it had reasons for producing the three documents it had initially withheld that had nothing to do with resolving the lawsuit.

The first document NOAA produced "should have been tagged as non-responsive, but was erroneously tagged as withhold-in-full pursuant to Exemption 5." Def's Opp. at 12. Despite

being told that the document was not responsive, AquAlliance "refused to relinquish its challenge to the withholding of the document." Id. NOAA thereafter "opted to produce the document in full to Plaintiff rather than quarrel needlessly about the need to produce the non-responsive document." Id. at 13. Because it produced the document to avoid an unnecessary squabble, and not because it changed its mind about the underlying status of the document, NOAA submits that the lawsuit did not catalyze its production. Id. But producing a document to avoid a fight—whether over that particular document or to placate the plaintiff more generally— seems like just the sort of thing one does in response to a lawsuit. See, e.g., Judicial Watch, Inc. v. DOJ, 878 F. Supp. 2d 225, 233 (D.D.C. 2012) ("For purposes of determining fee eligibility, the DOJ's discretionary disclosure of documents that it had previously withheld as exempt plainly constitutes a voluntary or unilateral change in position by the agency caused by this litigation" (internal quotation marks omitted)). Although this situation is somewhat distinct from the discretionary disclosure of a previously withheld document—because the agency believed the document was not even responsive in the first place—it still appears the lawsuit catalyzed its ultimate production.

As for the second document, a draft letter addressed to FERC regarding the Oroville Dam emergency, NOAA contends that, although it properly asserted the deliberative process privilege at the time the exemption was claimed, the need to assert the privilege dissipated over time because there was no longer any foreseeable harm from disclosing it. Def's Opp. at 13. The agency thus says its production "was catalyzed by the passage of time, and not by the filing of the instant suit." Id. This argument fails for a few reasons. For one thing, it presupposes that the agency would have reversed course and produced the document absent the lawsuit; that is, the agency would have gone back, reexamined its withholdings *sua sponte*, and independently

evaluated whether the basis for its claimed exemptions was as pertinent today as it was when it first claimed them. That is unlikely, to say the least. In addition, even if the Court accepts as true that the passage of time—and the lessened risk of harm in releasing the document—played a part in the agency's reversal, that does not preclude the lawsuit from also playing a part. To establish eligibility under the catalyst theory, a plaintiff need not show that the filing of the lawsuit be the "sole basis for the agency's change in position." Cornucopia Inst. v. Agric. Mktg. Serv., 285 F. Supp. 3d 217, 224 (D.D.C. 2018), aff'd, No. 18-5071, 2018 WL 5115535 (D.C. Cir. Oct. 11, 2018). All that's needed is a "substantial causal connection" between the lawsuit and the agency change in position. Id. And, by the agency's own admission, "NOAA partially released these three documents to AquAlliance in a good faith effort to settle the dispute between us[.]" Martin Decl. ¶ 30.

The last produced document, another draft letter, warrants the briefest discussion. NOAA admits that it "did change its position vis-à-vis [the letter] and release it," but stresses that the lawsuit "did not catalyze a change in NOAA's position regarding the disclosure of draft documents." Def's Opp. at 13–14. As a result, NOAA contends the disclosure of this document is irrelevant to the eligibility analysis. There is a faulty premise baked into NOAA's argument: that to qualify as a catalyst, the lawsuit must change an agency's broader position on the application of certain exemptions to certain types of documents. This demands far more than any of the relevant cases have required. Instead, "[t]he key question . . . is whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation.'" EPIC III, 811 F. Supp. 2d at 232 (quoting Church of Scientology of Cal., 653 F.2d at 587 (D.C. Cir. 1981)). The lawsuit here caused the

7

agency to change its position on this particular document and produce it to AquAlliance. That is enough to show the lawsuit was a catalyst for its production.

B. Entitlement

In addition to proving eligibility, AquAlliance must also show that it is entitled to attorneys' fees. See Weisberg, 745 F.2d at 1495. Courts balance four factors when determining eligibility: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government has a reasonable basis for withholding the requested information." Dorsen v. SEC, 15 F. Supp. 3d 112, 120 (D.D.C. 2014) (quoting Cotton v. Heyman, 63 F.3d 1115, 1117 (D.C. Cir. 1995)). "In applying this test, '[n]o one factor is dispositive.'" EPIC, 999 F. Supp. 2d at 66 (quoting Davy, 550 F.3d at 1159). "The sifting of those criteria over the facts of a case is a matter of district court discretion." Tax Analysts v. DOJ, 965 F.2d 1092, 1094 (D.C. Cir. 1992). "Moreover, courts have explained that the various factors are merely tools to aid in the pursuit of the two separate and distinct overriding objectives of the FOIA: to encourage FOIA suits that benefit the public interest, and to compensate for enduring an agency's unreasonable obduracy in refusing to comply with the FOIA requirements." Conservation Force, 160 F. Supp. 3d at 202. (internal quotation marks omitted). "Thus, the touchstone is always whether an award of attorney fees is necessary to implement the FOIA." Id. at 202–03 (internal quotation marks omitted).

NOAA concedes that the first three factors weigh in favor of a fee award. Def's Opp. at 21. However, it insists that the Court should not grant AquAlliance fees because its withholding was reasonable. Id. at 22. It is true that, regardless how the first three factors shake out, the reasonableness factor may be dispositive of entitlement. See Dorsen, 15 F. Supp. 3d at 121.

8

More precisely, "[i]f the Government's position is correct as a matter of law, that will be dispositive" whereas "if the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." Id. at 121 (quoting Davy, 550 F.3d at 1162). When evaluating the reasonableness of an agency's withholdings, courts should ask "whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Id. at 123 (citing McKinley v. Federal Housing Finance Agency, 739 F.3d 707, 712 (D.C. Cir. 2014)).

This factor favors NOAA and undercuts AquAlliance's entitlement to a fee award. Although NOAA initially failed to respond to AquAlliance in a timely manner, it appears to have acted responsively and helpfully ever since. Nineteen days after the suit was filed, the agency acknowledged AquAlliance's FOIA request and clarified two issues regarding the scope of the request. Vlamis Decl. ¶ 6. Two weeks later, NOAA produced to AquAlliance 3134 unredacted documents and 114 partially redacted documents and referred another 344 pages to other agencies for processing. Martin Decl. ¶ 9. Once production was complete, AquAlliance took issue with some of the agency's withholdings, and the parties engaged in a series of "challenges" and responses, in which AquAlliance questioned the legitimacy of certain withholdings and the agency promptly responded by either providing the records or better explaining the claimed exemption. See Martin Decl. ¶¶ 14–22; see also, id., Exs. 1–6 (AquAlliance challenges and agency responses). AquAlliance confirms that this collaborative give-and-take allowed the parties to "wrap up the case." See, e.g., Kenna Decl. ¶ 15 ("However, rather than litigate the redactions, over the next several months . . . the parties continued negotiations, with NOAA agreeing to release some redactions in exchange for agreement by AquAlliance to not challenge

9

others."). Indeed, AquAlliance and the agency worked so cooperatively that an AquAlliance attorney felt compelled to remark on their positive working relationship. See Martin Decl., Ex. 11 (email from AquAlliance attorney thanking Department of Commerce lawyer and stating that "I must say it doesn't always go this smoothly with every agency!").

To its credit, AquAlliance "agrees that the agency acted reasonably once the suit was filed, and that the parties were able to resolve the case in amicable fashion." Plaintiff's Reply in Support of Motion for Fees ("Pl's Reply"), ECF No. 27, at 9. It nonetheless insists that the focus should be on NOAA's pre-suit behavior, not on how it responded once the suit was filed. It cites Davy for the proposition that "[t]he question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after Davy filed suit." 550 F.3d at 1163. Although granting that the "post-complaint reasonableness greatly reduced the amount of effort that otherwise might have gone into the suit to compel production," AquAlliance says that "does not address the reasonableness of failing to timely process the request in the first instance[.]" Pl's Reply at 9–10.

AquAlliance is surely correct that a failure to respond to a FOIA request until *after* a lawsuit has been filed is probative of reasonableness in the entitlement calculus. For "[i]f the government could defeat an award of fees by citing a lack of resistance *after* the requester files a lawsuit to obtain requested documents, then it could force plaintiffs to bear the costs of litigation." Davy, 550 F.3d at 1163 (emphasis added). At the same time, it cannot be true that pre-suit delay by itself—irrespective of the delay's length, the reasons for it, and the agency's conduct post-suit—compels a reasonableness finding in a plaintiff's favor. Instead, it should be but one element of the reasonableness analysis. Courts assessing the reasonableness factor are to

10

consider, first, "whether the agency's opposition to disclosure had a reasonable basis in law," and second, "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Dorsen, 15 F. Supp. 3d at 123. A pre-suit failure to respond to the request helps answer the first question—because there will rarely be a "reasonable basis" for failing to respond altogether—but helps much less with the second question—because the delay may not reflect recalcitrance or obduracy at all.

Case law confirms that the sheer failure to respond pre-suit is not dispositive of reasonableness. In Morley v. CIA, 453 F. Supp. 2d 137, 142–43 (D.D.C. 2006),[1] the CIA failed even to acknowledge receipt of the plaintiff's FOIA request for over four months, and it did not conduct a search or provide a substantive response until the plaintiff filed suit nearly two months after that. The district court nevertheless concluded that delay was not unreasonable in denying the plaintiff's fee petition, and the D.C. Circuit affirmed. Morley v. CIA, 894 F.3d 389, 393 (D.C. Cir. 2018). The Circuit explained that "the statute itself imposes consequences on the agency for delay past the 20-day mark [and] does not suggest that an award of attorney's fees should be automatic in those situations," adding that "some delay past the 20-day mark is not necessarily so unreasonable in and of itself as to *require* an award of attorney's fees to an ultimately prevailing plaintiff." Id.

The D.C. Circuit has likewise cautioned that courts should not dwell on the fact of a pre-suit delay in determining whether a plaintiff has substantially prevailed under the eligibility

---

[1] This Court cited another opinion in the Morley saga earlier and cites yet another in the next sentence. Morley ping-ponged between the district court and the D.C. Circuit four or five times, and this Court cannot be sure how the various opinions should be numbered. It hopes that for present purposes the dates can be a guide to sequencing, but it makes no difference to the present analysis.

11

prong, and that reasoning is instructive in the entitlement context. If "an allegedly prevailing complainant must assert something more than *Post hoc, ergo propter hoc* [after the fact, therefore because of that fact]" to establish eligibility for an award, Cox v. DOJ, 601 F.2d 1, 6 (D.C. Cir. 1979), it stands to reason that a plaintiff should also have to show more than the fact of a pre-suit delay to establish that an agency acted unreasonably in response to a FOIA request. As Cox explained, there may be many good, and perhaps even unavoidable, reasons for the pre-suit delay:

> We have elsewhere had occasion to note both the plethora of Freedom of Information Act cases pending before federal agencies at any given time, and the time-consuming nature of the search and decision process. If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit.

601 F.2d at 6 (internal citation omitted). It likewise cannot be said that an agency's delayed response to a FOIA request renders its processing of the request unreasonable without exploring why the delay occurred, how long it lasted, and how the agency responded when called to account for it.

Here, NOAA posits an innocent explanation for the 52-day delay. In its brief, the agency suggests the sheer number of FOIA requests it receives prevents it from responding to FOIA requests within the statutorily-provided 20 days. Def's Opp. at 23. It reports that NOAA "received 475 FOIA requests in Fiscal Year 2017, and had 140 requests pending at the end of the fiscal year." Id. It further explains that "[s]adly, a response time of 52 days, although outside the limits dictated by FOIA, is neither unusual or unreasonable, especially for a request that locates thousands of documents to review." Id. AquAlliance urges the Court to disregard this argument because it is not directly substantiated by the declaration filed in support of the

agency's opposition—which refers to the two-month delay before the declarant began processing the request but does not offer reasons for that delay. Pl's Reply at 8 (citing Martin Decl. ¶¶ 3–4).

The agency should have offered firmer support for the backlog argument, but the Court nevertheless has no reason to doubt it. It is common knowledge that many agencies contend with a massive FOIA backlog. See, e.g., Jory Heckman, *Despite Hiring Freeze, Agencies Made Progress in FOIA Backlog in FY 17*, Federal News Network (June 8, 2018), https://federalnewsnetwork.com/agency-oversight/2018/06/despite-hiring-freeze-agencies-processed-record-number-of-foia-requests-in-fy-17/ (discussing record number of FOIA requests in 2017 and existing backlog of 111,344 requests). This Court's experience with FOIA cases has been that agencies regularly do not respond to a request within the 20-day time limit or before a suit is filed, a reality recognized by the D.C. Circuit. Morley, 894 F.3d at 393 (failing to respond within 20-day time limit "is true of a vast number of FOIA requests"). The Court obviously does not sanction this practice, but just how widespread it is lends credence to NOAA's contention here. Moreover, the length of the delay here is far from abnormal and by itself not nearly enough to suggest agency recalcitrance. Id. (delay of four months between FOIA request and filing suit, followed by another 50-odd days before response, was not *per se* unreasonable); cf. Harvey v. Lynch, 178 F. Supp. 3d 5, 8 (D.D.C. 2016) (delay of 67 business days between FOIA request and filing suit, "while regrettable, is not of the length that would ordinarily permit the Court to infer that it was prompted to action by Harvey's lawsuit.").

And even accepting that NOAA ought to have offered a more robust explanation for the pre-suit delay,[2] the agency's actions after the suit was filed would still compel the conclusion

---

[2] In future cases where the government avers the delay was due to an administrative backlog rather than deliberate recalcitrance, it should include supporting declarations to that effect.

that the agency acted reasonably in response to AquAlliance's request. NOAA produced a massive amount of documents within weeks, and then worked diligently to make sure the few hundred documents it referred to other agencies were being processed expeditiously. See Martin Decl. ¶ 9. Then, when some disputes lingered, the parties resolved them through collegial and productive exchanges and without the need for motions practice in federal court. See id. ¶ 15. Frankly, the Court wishes it saw many more FOIA cases handled in a like manner. To be sure, the agency does not earn perfect marks here: the failure to respond to the request within FOIA's 20-day deadline and before the lawsuit was filed renders its behavior less than exemplary. But only a myopic focus on that initial delay suggests the agency's behavior in this case was unreasonable. Taking a more comprehensive view of NOAA's response to the request in this case, the Court simply does not detect the sort of "unreasonable obduracy" that compels fee-shifting under FOIA. Conservation Force, 160 F. Supp. 3d at 202.

Because NOAA responded reasonably to the FOIA request, AquAlliance is not entitled to an award. This is true notwithstanding that it is only one factor of four that favors NOAA. Dorsen, 15 F. Supp. 3d at 121 ("[A]lthough . . . no particular factor should be given disproportionate weight, in some circumstances the final factor may be dispositive."). Remember, "the touchstone [of the entitlement prong] is always whether an award of attorney fees is necessary to implement the FOIA." Conservation Force, 160 F. Supp. 3d at 202–03. Beyond the relatively brief delay in processing the request before the lawsuit was filed, the way in which this case has proceeded suggest that a fee award is *not* necessary to either motivate requesters to zealously seek information or encourage the government to efficiently respond to their requests.

**IV. Conclusion**

For the foregoing reasons, the Court will deny Plaintiff's motion for attorneys' fees. A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>June 12, 2019</u>